**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MICHELLE W.,

                                    Plaintiff,

          v.                                            3:20-CV-707
                                                        (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

Lachman & Gorton                   PETER A. GORTON, ESQ.
1500 E. Main Street
P.O. Box 89
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration      JAMES J. NAGELBERG, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**MEMORANDUM-DECISION & ORDER**[1]

          Plaintiff Michelle W.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

_____

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 7.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

"defendant") denying her applications for disability insurance benefits and supplemental security income benefits.  Dkt. No. 1.  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 15, 22.  For the reasons set forth below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further administrative proceedings.

## I.   Background[3]

### A.  Factual Background

Plaintiff was born on January 29, 1979.  T. 70, 297.  She is a high school graduate, who subsequently obtained certification as a surgical technician.  Id. at 40-41, 680.  Plaintiff's employment history includes work as an insurance sales agent and a surgical technician.  Id. at 362-369.

In 2002, plaintiff injured her left knee in a fall.  T. at 586.  Despite two knee surgeries, plaintiff continued to report "shooting, burning" pain that radiated to her calf and hips; made it difficult to stand or sit for extended periods; and was aggravated by bending, walking, or standing.  Id. at 72, 450, 586, 651.  She was diagnosed with Reflex Sympathetic Dystrophy Syndrome ("RSDS"), also frequently known as Complex Regional Pain Syndrome ("CRPS"), a chronic pain syndrome that can manifest after a

---

[3]  References to the administrative transcript will be cited as "T." and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

bone or soft tissue injury.[4]  Id. at 586.  Plaintiff also suffered from lower back pain that continued despite lumbar surgery in 2015.  Id. at 71, 673.

Plaintiff has not worked since 2014, when she reported that her pain became incompatible with the physical demands of her surgical technician position.  T. at 680. She testified that the pain never goes away, but that on a good day it is tolerable, and she can help around the house with some chores and go grocery shopping with her husband.  Id. at 45-46.  On a bad day, plaintiff must lay down on the couch soon after getting out of bed.  Id.

## B.  Procedural Background

On January 7, 2015, plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income under Title XVI of the Social Security Act.  T. at 297-311.  Each application alleged a disability onset date of December 23, 2014.  Id. at 297, 304.  Both applications were initially denied on April 9, 2015, and plaintiff requested a hearing on April 24, 2015.  Id. at 98-119, 148-153, 156-157.  Plaintiff appeared at her March 6, 2017, hearing with counsel and testified before Administrative Law Judge Shawn Bozarth.  Id. at 36-65.

On April 7, 2017, ALJ Bozarth rendered an unfavorable decision, and plaintiff administratively appealed.  T. 120-142, 284-286.  On May 21, 2018, the Appeals Council granted the request for review, vacated the hearing decision, and remanded the case to

---

[4] SSR 03-02 uses the acronyms RSDS, CRPS, and RSDS/CRPS interchangeably to refer to this condition.  68 FR 599971-01, at *59972, 2003 WL 22380904, at *1.  For ease of reference, and to correspond to the parties' briefs, the Court will use "CRPS" in this decision.

an ALJ to, among other things, re-evaluate plaintiff's subjective complaints of pain, the effectiveness and side effects of her pain medication, and the related impact on her activities of daily living.  Id. at 143-147.  The Appeals Council directed the ALJ to evaluate Plaintiff's reported migraines pursuant to Listing 11.01 and Plaintiff's diagnosed CRPS in accordance with Social Security Ruling ("SSR") 03-2p.

On remand, ALJ Elizabeth Koennecke held a hearing on February 25, 2019, for additional testimony from plaintiff and examination of vocational expert ("VE") Marian R. Maracco.  T. at 67-97.  On April 9, 2019, ALJ Koennecke rendered an unfavorable decision.  Plaintiff again administratively appealed, but the Appeals Council denied her request for review on May 11, 2020.  Id. at 1-4.  In response, plaintiff timely commenced this action on June 25, 2020.  Dkt. No. 1.

### C.  ALJ Koennecke's April 9, 2019 Decision

In ALJ Koennecke's April 9, 2019, decision that is at issue in this case, the ALJ first determined that plaintiff met the insured status required through December 31, 2019.  T. at 13.  Applying the five-step disability sequential evaluation, the ALJ next determined that plaintiff had not engaged in substantial gainful activity since December 23, 2014, the alleged onset date.  Id.  The ALJ found at step two of the sequential evaluation that plaintiff had the following severe impairments: "degenerative disc disease in the lumbar spine with L4 radiculopathy with residuals of laminectomy, remote history of left knee injury and surgery with residual complex regional pain syndrome, obesity, and all mental impairments as variously characterized." Id.

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically-equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 15-17.  Before

reaching step four, the ALJ concluded that plaintiff retained the residual functional

capacity ("RFC") to perform less than the full range of sedentary work.  Id. at 17-26.

Specifically, the ALJ found that plaintiff could only occasionally balance, crouch, crawl,

stoop, bend, kneel, or climb stairs; was unable to climb ladders, ropes, or scaffolds; and

should not be exposed to unprotected heights or moving machinery.  Id. at 17.  With

regard to mental limitations, the ALJ found that plaintiff should have only occasional

contact with coworkers, supervisors, or the public, and should work in a low stress job,

defined as "only requiring occasional decision-making, occasional use of judgment

required, and with occasional changes in the work setting."  Id.

At step four, the ALJ determined that plaintiff was unable to perform any of her

past relevant work.  T at 26.  Considering plaintiff's RFC, age, education, and work

experience, along with the VE testimony, the ALJ determined that plaintiff could perform

other jobs that exist in significant numbers in the national economy, including optical

goods assembler, document preparer, and addresser.  Id. at 27-28.  Therefore, the ALJ

determined that plaintiff "has not been under a disability, as defined in the Social

Security Act, from December 23, 2014 through the date of this decision."  Id. at 28.

### D.  Relevant Medical Opinion Evidence

### 1.  Dr. Gilbert Jenouri

On March 12, 2015, Dr. Gilbert Jenouri performed a physical consultative

examination of plaintiff.  T. at 675-678.  Prior to the examination, plaintiff reported lower

back pain that occurred every day and was precipitated by activity, even following back

surgery in 2015.  T at 675.  She also reported a sharp, "at times electric" pain in her lower left leg that had been diagnosed as CRPS.  Id.

During the examination, Dr. Jenouri observed that plaintiff appeared in no acute distress, but demonstrated an antalgic gait with a limp, and was unable to walk on her heels and toes without difficulty.  Id. at 676.  Her squat was only 20%, but she required no assistive devices, and did not require assistance changing for the examination, getting on and off the examination table, or rising from a chair.  Id.

Plaintiff's cervical spine had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  T at 677.  Her lumbar spine showed reduced extension, flexion, lateral flexion bilaterally, and rotation bilaterally.  Id.  She demonstrated full range of motion in her upper extremities, but reduced range of motion in the hips, and did not perform some movements were not performed due to pain.  Id.  Dr. Jenouri observed hyperesthesia and slightly reduced strength in the left lower extremity, with full strength in the right lower extremity.  Id.  Plaintiff's hand and finger dexterity were intact, and she showed full grip strength in both hands.  Id. at 678.

Based on his examination, Dr. Jenouri opined that plaintiff had "mild to moderate restriction walking, standing, and sitting long periods, bending, stair climbing, lifting, and carrying."  T at 678.  He also recommended that plaintiff should avoid smoke, dust, and other known respiratory irritants, in light of her reported history of asthma.  Id. at 675, 678.  The ALJ assigned "great weight" to Dr. Jenouri's opinion regarding plaintiff's exertional limitations, but rejected his recommended restrictions on respiratory limitations as impracticable given plaintiff's status as a cigarette smoker.  Id. at 23-24, 676, 678, 1122.

## 2.  Dr. Mary Ann Moore

Dr. Mary Ann Moore performed a consultative psychiatric evaluation of plaintiff on March 12, 2015.  T. at 680-685.  During the examination, Dr. Moore observed that plaintiff was generally cooperative and responsive to questions, with appropriate eye contact but restless motor behavior.  Id. at 681-682.  She exhibited a coherent and goal-directed thought process, despite crying during the evaluation.  Id. at 682.  Plaintiff demonstrated intact attention and concentration, but "mildly" impaired memory with regard to complex information that Dr. Moore though may have resulted from depression and anxiety.  Id.

Based on this examination, Dr. Moore opined that plaintiff showed no limitations in regard to following and understanding simple directions and instructions and performing simple tasks independently.  T at 683.  She further opined that plaintiff had no limitations with regard to maintaining attention and concentration, and mild limitations for learning new tasks and performing complex tasks independently.  Id.  In Dr. Moore's opinion, plaintiff had moderate limitations in regard to appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule.  Id.  The ALJ assigned "great weight" to Dr. Moore's opinion because it was supported by the results of the consultative examination.  Id. at 25-26.

## 3.  Nurse Practitioner ("NP") Cori Pane

NP Cori Pane had been treating plaintiff for pain management, including monthly office visits, since at least 2006.  T. at 73, 468.  She completed a checkbox opinion questionnaire on January 19, 2017, and provided a narrative addendum dated April 25,

2017.  Id. at 690-691, 921.  NP Pane described plaintiff's condition as chronic

neuropathic pain of the left leg with CRPS and radiculopathy with history of knee injury

and lumbar surgery, with "pain, burning [and] swelling in the knee and leg."  Id. at 690.

NP Pane opined that these impairments caused pain and fatigue resulting in

diminished concentration and work pace, and would cause plaintiff to need to rest

during a workday.  T at 690.  She further opined that, as a result of plaintiff's physical

impairments, she would be off task more than 33% of the workday.  Id.  She observed

that plaintiff's condition caused her good days and bad days, and that these bad days

were likely to cause plaintiff to miss more than four workdays per month.  Id. at 691.

In NP Pane's opinion, plaintiff could sit for approximately four hours out of an

eight hour workday, and would need to change positions approximately every hour.  T

at 691.  She also opined that plaintiff could stand or walk for a total of approximately two

hours each workday, and was limited to occasional lifting of up to ten pounds.  Id.  NP

Pane stated that these limitations existed for the period from June 2014 through the

date of her opinion.  Id.

In her narrative addendum, NP Pane explained that plaintiff had muscle atrophy

of the left quadricep, and experienced severe leg pain from mild contact such as

clothing fabric or water in the shower.  T at 921.  She described that simple actions,

such as laying in bed, can cause "excruciating pain."  Id.  She also noted that multiple

interventions, including lumbar decompression surgery and spinal cord stimulator

implants, were unsuccessful.  Id.

NP Pane opined that plaintiff's prescribed high dose opiates "are particularly

effective, but leave her fatigued and sedated."  T at 921.  She also reported that plaintiff

experienced severe flare-ups of pain when standing and walking for longer than fifteen minutes, and avoided climbing stairs due to the severe pain.  Id.  In her opinion, plaintiff was unable to concentrate due to the pain and the impacts of her high dose opiate medication.  Id.  In addition, NP Pane cautioned that plaintiff's pain medication could result in problems with short-term memory. Id.

The ALJ assigned "partial weight" to NP Pane's opinion, "but only to the extent that it is supported by the evidence of record."  T at 22.  In particular, the ALJ found "no objective evidence to support [Pane's] opinion regarding the claimant's absenteeism or time off task."  Id.  The ALJ also cited the psychiatric consultative examination that showed intact attention and concentration, and concluded that "the evidence suggests that [plaintiff] has no deficits in concentration, which contradicts [Pane's] opinion in this regard.  Id..  The ALJ concluded that NP Pane's opinions regarding time off task and days absent were purely speculative, and therefore entitled to "little evidentiary weight." Id.

The ALJ assigned "some weight" to the remainder of NP Pane's opinion, "because it is a treating source opinion and is supported by the clinical findings and diagnostic studies."  T at 23.  In particular, the ALJ cited inconsistent examination results that sometimes showed weakness and hyperesthesia in plaintiff's left knee, and an EMG nerve study that showed chronic radiculopathy at the L4 vertebrae.  Id. at 23, 821-822.  Taking these factors into account, the ALJ concluded that a limitation to sedentary work was consistent with NP Pane's overall opinion.  Id. at 23.

On June 4, 2018, the ALJ requested clarification from NP Pane regarding her opinion, in particular whether "the NP relied on any objective evidence in reaching these conclusions."  T at 249-250.  No additional clarification was submitted.  Id. at 24-25.

### 4.  Dr. Khalid Sethi

Dr. Khalid Sethi performed plaintiff's February 2015 lumbar surgery and provided regular follow-up care every few months, including the trial installation of a spinal stimulator.  T. at 54, 785-787, 816, 1022-1025.  He completed an opinion questionnaire on January 27, 2017.  Id. at 783-784.

Dr. Sethi opined that plaintiff's physical impairments caused pain, fatigue, as well as diminished concentration and work pace.  T at 783.  He also opined that these impairments would cause plaintiff to need to rest at work.  Id.  Dr. Sethi did not specify the amount of time that plaintiff would be off-task, but opined that her condition would produce good days and bad days, and that those bad days were likely to lead to four days of missed work each month.  Id. at 784.  He further opined that plaintiff was limited to sitting for approximately four hours per workday, and would need to change positions every fifteen to thirty minutes.  Id.  He also opined that plaintiff could stand or walk for a total of approximately two hours each workday, could frequently lift up to five pounds, and could occasionally lift up to twenty pounds.  Id.  His opinion covered the time period from December 10, 2014, to January 27, 2017.  Id.

The ALJ assigned "partial weight" to Dr. Sethi's opinion, "but only to the extent that it is supported by the evidence of record."  T at 23.  In particular, the ALJ found no evidence to support the opinion that plaintiff would miss four days of work per month, aside from plaintiff's subjective report of "good days and bad days."  Id.  The ALJ thus

discounted Dr. Sethi's opinion regarding any limitations in concentration, whether attributable to medication or mental impairment.  Id.  She assigned "some weight" to the remainder of the opinion, in light of Dr. Sethi's treating physician status and support from the objective medical evidence, including a post-operative EMG study and clinical findings during physical examinations.  Id.

In January 2017, Dr. Sethi ordered a functional capacity examination.  T at 785-786.  The ALJ requested a copy of the assessment, but subsequent notes indicate that it was not performed.  Id. at 250, 398.

### 5.  Dr. Sanjiv Patel & Physician Assistant ("PA") Thomas Jones

Plaintiff described PA Thomas Jones as her primary care provider for more than twenty years, and the record includes a treatment history dating back to August 2014. T. at 76, 406-409.  PA Jones works under the supervision of Dr. Sanjv Patel, whose treatment relationship with plaintiff dates back to at least December 2016.  Id. at 699.

On January 7, 2019, PA Jones completed a medical opinion questionnaire that was co-signed by Dr. Patel.  T at 1192-1193.  Medical source statements co-signed by a treating physician are evaluated as having been the treating physician's opinion.  See Djuzo v. Comm'r of Soc. Sec., No. 5:13-CV-272, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014) ("[w]hen a treating physician signs a report prepared by . . . an 'other source' whose opinions are not presumptively entitled to controlling weight . . . the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views.").  For ease of reference, the Court will refer to this questionnaire as Dr. Patel's opinion.

Dr. Patel opined that plaintiff's conditions included chronic neuropathic pain of the left knee, CRPS, status post-lumbar laminectomy, and chronic sacroiliac[5] joint pain. T at 1192.  He opined that these conditions would cause plaintiff pain, fatigue, and diminished concentration and work pace.  Id.  In his opinion, these limitations would cause plaintiff to be off task more than 33% of the workday.  Id.  He also opined that plaintiff's conditions were expected to produce good days and bad days, and these bad days would lead to more than four missed workdays per month.  Id. at 1193.

Dr. Patel opined that plaintiff's medication was a cause of fatigue and drowsiness that impacted her ability to concentrate, focus, and stay on task. T at 1193.  He also opined that plaintiff could sit for approximately one to two hours during the workday, but would need to change positions every 10-15 minutes.  Id.  He further opined that plaintiff could only stand or walk for a total of one to two hours each workday.  Id.  In his opinion, plaintiff was limited to occasional lifting and carrying up to five pounds.  Id.  The opinion indicates that these limitations were present between January 2014 and November 2018.  Id.  The ALJ did not specify an assigned weight for Dr. Patel's opinion, but found the limitations therein to be "very restrictive" and unsupported by examination notes.  Id. at 25.

## II.  The Parties' Arguments

In support of reversal, plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  Dkt. No. 15. Specifically, plaintiff contends that the ALJ (1) committed legal error by failing to evaluate plaintiff's CRPS in accordance with

---

[5] Sacroiliac joints are located where the lower part of the spine connects to the pelvis. See Sacroiliitis, *available at* https://www.mayoclinic.org/diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747 (last visited Oct. 25. 2021).

SSR 03-02p, (2) improperly rejected plaintiff's treatment provider's opinion concerning time off-task and absenteeism, and (3) erred at step five of the sequential process.  See Dkt. Nos. 15, 23-1.  Conversely, the Commissioner argues that (1) the ALJ properly evaluated the medical evidence, including the evidence related to plaintiff's pain, and reached an RFC determination supported by substantial evidence, and (2) the step five analysis is supported by substantial evidence.  See Dkt. No. 22.

### A. Legal Standards

### 1. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review  . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper

legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

### 2. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458,

at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently  engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### B. The Treating Physician Rule

The Second Circuit has long recognized the 'treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  However, "the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must explicitly consider, inter alia, "'(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. §§ 404.1527(c) and 416.927(c) is required.  Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the plaintiff replacing the consideration of the treatment relationship between the source and the plaintiff.  See 20 C.F.R. §§

404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In Estrella v. Berryhill, 925 F.3d 90 (2d Cir. 2019), the Second Circuit has more recently addressed the Commissioner's failure to "explicitly" apply the regulatory factors set out in Burgess when assessing the weight to accord to a treating physician's opinion. There, the Court explained that such a failure is a procedural error and remand may be appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'" Id. at 96 (alteration in original) (quoting Halloran, 362 F.3d at 32). The Court clarified, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32). The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the ... rule was not traversed' " is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." Estrella, 925 F.3d at 96

### III. Legal Analysis

#### A. RFC Determination

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F.Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is

determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform."  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.' " Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the following: the claimant is able to only occasionally balance, crouch, crawl, stoop, bend, kneel, or climb stairs.  She is unable to climb ladders, ropes, or scaffolds.  She should not be exposed to unprotected

heights or moving machinery.  The claimant should have only occasional contact with coworkers, supervisors, or the public.  The claimant should work in a low stress job, defined as only requiring occasional decision-making, occasional use of judgment required, and with occasional changes in the work setting.

T. 17.  The regulations define sedentary work as work that

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

### B.  Pain Associated with Plaintiff's CRPS and Other Impairments

CRPS is a "chronic pain syndrome most often resulting from trauma to a single extremity."   SSR 03-02p, "Titles II and XVI: Evaluation Cases Involving Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome. 68 FR 599971-01, at *59972, 2003 WL 22380904, at *1 (S.S.A. Oct. 20, 2003).  The principal "characteristic of this syndrome [is] that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual."  Id.  SSR 03-02 further provides:

RSDS/CRPS patients typically report persistent, burning, aching or searing pain that is initially localized to the site of the injury. The involved area usually has increased sensitivity to touch . . . . Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb. Cases have been reported to progress and spread to other limbs, or to remote parts of the body.

Id.

Plaintiff argues that the ALJ's RFC determination failed to properly account for pain resulting from Plaintiff's diagnosed CRPS and other physical impairments.  Dkt. No. 15 at 16-26.  The Commissioner contends that the ALJ properly assessed plaintiff's CRPS and other causes of pain and set forth an RFC determination that encompassed her

impairments.  See Dkt. No. 22 at 5-12, 25-27.

Upon review of the parties' briefs, the ALJ's decision, and the administrative record, this Court agrees with plaintiff and remands for further administrative proceedings for evaluation of Plaintiff's CRPS in accordance with SSR 03-02p.  SSR 03-02p provides standards for evaluating disability claims involving CRPS.  Although the Ruling states that "[c]laims in which the individual alleges [CRPS] are adjudicated using the sequential evaluation process, just as for any other impairment," it also requires careful consideration of certain factors unique to the condition. The ALJ's heavy reliance on objective assessments and the consultative examination results appears to take the opposite approach as that required by SSR 03-02p, which expressly instructs an ALJ that

> Opinions from an individual's medical sources, especially treating sources, concerning the effect(s) of RSDS/CRPS on the individual's ability to function in a sustained manner in performing work activities, or in performing activities of daily living, are important in enabling adjudicators to draw conclusions about the severity of the impairment(s) and the individual's RFC. In this regard, any information a medical source is able to provide contrasting the individual's medical condition(s) and functional capacities since the alleged onset of RSDS/CRPS with the individual's status prior to the onset of RSDS/CRPS is helpful to the adjudicator in evaluating the individual's impairment(s) and the resulting functional consequences.

> In cases involving RSDS/CRPS, third-party information, including evidence from medical practitioners who have provided services to the individual, and who may or may not be "acceptable medical sources," is often critical in deciding the individual's credibility.  Information other than an individual's allegations and reports from the individual's treating sources helps to assess an individual's ability to function on a day-to-day basis and helps to depict the individual's capacities over a period of time, thus serving to establish a longitudinal picture of the individual's status.

SSR 03-02p, 68 FR 59971-01, at *55975, 2003 WL 22380904, at *7.

Although the ALJ found that Plaintiff suffered from CRPS and that it was a severe impairment, there is minimal indication that she properly applied the criteria established

in SSR 03-02p.  See Pensiero v. Saul, No. 3:19-CV-279 (WIG), 2019 WL 6271265, at *6 (D. Conn. November 25, 2019) (remanding where "the ALJ found that Plaintiff suffered from CRPS and that it was a severe impairment, he did not cite SSR 03-02p or give any indication that he was aware of the ruling or its requirements."); Roe v. Colvin, No. 1:13-CV-1065 (GLS), 2015 WL 729684, at *4 (N.D.N.Y. Feb. 19, 2015) (finding that the ALJ properly applied SSR 03-02p where he relied on medical records that "included the impact of CRPS, including pain, on [the plaintiff's] ability to work"); Cooley v. Colvin, 12-CV-1284 (NAM/VEB), 2013 WL 12224205, at *5 (N.D.N.Y. Oct. 15, 2013) (remanding where the ALJ made findings that strongly suggest he was unaware of, and did not consider the factors highlighted by, SSR 03-02p); see also Smith v. Berryhill, No. 1:15-CV-00795-MAT, 2018 WL 936381, at *3 (W.D.N.Y. Feb. 18, 2018) (finding ALJ did not err in the application of SSR 03-02p because he properly considered all the treatment records and opinion of claimant's treating physician "on at least three occasions that she was capable of working with restrictions.").

The ALJ makes several references to 03-02p, but her reliance on objective clinical data, or the absence thereof, suggests a misapplication of the SSR. T. 13-14.  The Court also notes that the ALJ mistakenly refers to the SSR as "HALLEX 03-02." Id. at 13.  "The HALLEX is a manual that provides the Social Security Administration with a set of guidelines and procedures" and "district courts within the Second Circuit have found that 'HALLEX policies are not regulations and therefore not deserving of controlling weight.'" Dority v. Comm'r of Soc. Sec., No. 14-cv-0285, 2015 WL 5919947, at *5 (N.D.N.Y. Sept. 15, 2015) (quoting Edwards v. Astrue, No. 10-CV-1017, 2011 WL 3490024, at *6 (D. Conn. Aug. 10, 2011)) (collecting cases); see also Harper v. Comm'r of Soc. Sec., No.

08-cv-3803, 2010 WL 5477758, at *4, (E.D.N.Y. Dec. 23, 2010) (noting that because HALLEX is "simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner," a "failure to follow HALLEX does not necessarily constitute legal error"). By contrast, SSRs "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner, and "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35. Although not dispositive, the ALJ's language suggests a misunderstanding of the binding nature of SSR 03-02.

To be sure, the ALJ did marshal substantial evidence to support some portions of her RFC determination. For example, the ALJ noted that plaintiff:

> . . . has a remote history of left knee surgeries in 2002 and 2006, but returned to work for many years after these surgeries. She complained of left knee pain and hyperesthesia in her left leg related to CRPS for many years and well before her alleged onset date. The claimant testified at the hearing that the pain was stabbing and burning, and it never goes away. The claimant testified that it felt like she was being electrocuted. The claimant complained of left knee pain radiating into her calf in January 2014. However, her provider noted that there was no clear physical cause for her complaints. X-rays of her knee showed no acute bone, joint, or soft tissue abnormalities and only small joint effusion. An ultrasound of her left lower extremity ruled out [deep vein thrombosis].

T. 18. After summarizing the other imaging reports and nerve studies in the record, the ALJ concluded that the RFC's limitation to sedentary exertional work appropriately "accounted for any standing or walking limitations reasonably associated with the claimant's left leg and back impairments." Id. at 19. Indeed, the RFC determination's limitation to two hours of standing or walking is consistent with the January 27, 2017, opinion of Dr. Sethi; the January 19, 2019, opinion of NP Pane; and the January 7, 2019, opinion of Dr. Patel. Id. at 19, 691, 784, 1193. Each of these sources, whose documented

treatment relationship with plaintiff ranged from several years to at least a decade, opined that plaintiff could stand and/or walk for a total of two hours out of an eight-hour workday. This finding is also somewhat supported by plaintiff's testimony that she could stand for approximately twenty minutes at one time and walk between twenty to thirty minutes at one time before needing to sit down or rest.  See id. at 72.

However, the evidence relied upon by the ALJ for other findings, particularly plaintiff's ability to sit for long periods; her need to regularly change positions; and the impact of her pain and opiate pain medication on her ability to maintain attention and concentration; remain on-task; and avoid excessive absenteeism is less clear. Accordingly, this Court "cannot confidently conclude that the ALJ applied the proper legal standard in evaluating plaintiff's CRPS."  See Cooley, 2013 WL 12224205, at *5 (N.D.N.Y. Oct. 15, 2013).  As such, a remand for reconsideration of Plaintiff's CRPS in accordance with SSR 03-02p is warranted for the reasons set forth below.

### 1. ALJ's Reliance on Objective Data is Inconsistent with SSR 03-02

Overall, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  T. at 18.  The ALJ noted that some medical evidence in the record supported plaintiff's subjective description of her functional limitations, including Nurse Pane's October 2016 examination report that described plaintiff as walking with an antalgic gait, with a limp favoring her left leg, and muscle atrophy in the left quad with "hyperesthetic" pain along the left knee.  Id.  The ALJ also

noted that plaintiff underwent an unsuccessful trial installation of a spinal cord stimulator that failed to provide adequate pain relief.  Id. at 20, 968.  In January 2018, a physical examination showed that plaintiff was "unable to lift the left lower extremity from the [hospital] bed, but she can do it with the assistance of the right foot, but she can move the right leg." Id. at 20, 1030.

However, the ALJ found that "medical evidence that detracts from the claimant's claim" to be more compelling.  T. 20.  The ALJ cited an improvement in plaintiff's back pain following surgery in February 2015.  Id. at 21, 687, 761.  She also relied upon a June 2015 treatment note reflecting "dramatic improvement for 3 days" following a sympathetic ganglion block injection.  Id. at 21, 804.  The ALJ also noted October 2016 treatment notes showed that plaintiff tolerated her prescribed opiate medication without any signs or symptoms of side effects or abuse.  Id. at 20, 968.  The ALJ also noted plaintiff's treatment provider ruled out further surgical treatment after reviewing plaintiff's imaging reports in July 2017.  Id. at 20, 1022.

The ALJ's approach does not follow the requirement in SSR 03-2p to take a longitudinal view of plaintiff's CRPS treatment, in order to assess an individual's capacities over a period of time.  See SSR 03-02p, 68 FR 59971-01, at *55975, 2003 WL 22380904, at *7.  SSR 03-02p further cautions that it is "characteristic of [CRPS] that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." Id., 68 FR 599971-01, at *59972, 2003 WL 22380904, at *1.  Thus, the lack of supporting diagnostic and clinical findings is to be expected and may not provide a sound basis for rejecting a claimant's complaints of severe pain. See Bernstein v. Astrue, No 09-cv-17, 2010 WL 746491, at *8 (M.D. Fla. Mar. 3, 2010) ("As the medical authorities

and SSR 03-2p state, [CRPS] is a disease for which objective findings can be minimal.")

Similarly, although treatment notes from June 2015 document a "dramatic' improvement for three days following the sympathetic ganglion block injection, those benefits appear to have been short-term.  T at 21, 804.  Plaintiff reported severe pain in her upper back and mid back, as well as persistent cramping down her left leg at her next evaluation in September 2015.  Id.  The ALJ did not reference any other evidence suggestive of long-term improvement in plaintiff's leg pain.  Id. at 801.

The ALJ buttresses her analysis of this objective data with a discussion of plaintiff's daily activities that appears to overstate plaintiff's physical capabilities.  The ALJ noted plaintiff's testimony showing "a broader range of daily living . . .  indicating that she does chores, cooks, shops, cleans, fold[s] laundry, irons clothes, and vacuums."  Id. at 22, 47.  However, Plaintiff only testified that, on average, she had three "good days" and four "bad days" each week.  Id. at 46.  On these good days, plaintiff was able to help her husband with grocery shopping, do "some cooking," "try to do the vacuuming," and help with laundry and ironing, although she was unable to put clothes into or remove them from the washing machine and could not carry the laundry basket herself.  Id. at 47.  It is not evident how these limited activities demonstrate the capacity to perform the sedentary workload outlined in the RFC, particularly in light of the contrary medical and testimonial evidence.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (remanding where there was no evidence that the plaintiff "engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job."); Stoesser v. Comm'r of Soc. Sec., No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (claimant's daily activities-including cleaning

the house, watching television and playing video games, cooking simple meals, and shopping for groceries-did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday in light of plaintiff's testimony that he could not sit for more than 30 minutes to an hour without standing up) adopting report-recommendation, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011).

The ALJ also cited references in plaintiff's treatment notes about a flight to Texas in November 2018 as evidence of an ability to travel indicative of plaintiff's "ability to perform work activity at the light exertional level", or at "the sedentary level (if not greater)" and proof that plaintiff was capable of "prolonged sitting." Id. at 20, 21, 25, 1194-1195. Travel activities can be a valid consideration when an ALJ is evaluating a claimant's ability to function with pain. See Smead v. Comm'r of Soc. Sec., No. 1:13-CV-185 (JGM/JMC), 2014 WL 2967601, at * (D. Vt. July 1, 2014) (the plaintiff's extensive domestic and international air travel was inconsistent with the functional limitations allegedly imposed by her fibromyalgia). However, the record indicates that plaintiff had significant anxiety in advance of the trip, and her physicians postponed a planned reduction in her opiate pain medication to allow her to better handle the discomfort of air travel. T. at 1195. The ALJ failed to explain how plaintiff's ability to complete this single trip, without more detail, demonstrated an ability to regularly meet the physical demands of sedentary work as set forth in the RFC determination. See Woodford v. Apfel, 93 F.Supp. 2d 521, 529 (S.D.N.Y. 2000) (the ALJ erred when he concluded that the plaintiff could meet the sitting requirements of sedentary work because she cooked and shopped for herself, used public transportation, and managed to remain seated for one long plane ride).

### 2.  The ALJ's Reliance on the Consultative Examiner's Opinion
### Is Inconsistent with SSR 03-02p.

During Dr. Gilbert Jenouri;s March 12, 2015, consultative examination, plaintiff did not appear in acute distress, and demonstrated only a "slightly antalgic" gait with difficulty walking on her heels and toes.  Id. at 20, 676.  Although plaintiff experienced difficulty squatting, limited range of motion in the hips, and reduced strength in her left lower extremity, she had full range of motion in her knees, ankles, and upper extremities, and was able to rise from a chair and get on and off the examination table without assistance.  Id.

The ALJ assigned "great weight" to Dr. Jenouri's opinion that plaintiff had "mild to moderate restriction walking, standing and sitting long periods" and in her ability to bend, lift, carry, and climb stairs.  T at 23-24, 678.  In general, the ALJ's reliance on Dr. Jenouri's vague opinion that plaintiff had "mild to moderate restrictions" would be questionable without further support in the record.  "The use of the terms 'mild,' 'moderate,' and 'marked,' to describe the Plaintiff's restrictions in 'sitting, standing, and walking' are the kinds of vague terms, which courts have found insufficient to support a determination that a Plaintiff is not disabled under the Act."  Brady v. Colvin, No. 14-CV-5773 (ADS), 2016 WL 1448644, at *8 (E.D.N.Y. Apr. 12, 2016) (collecting cases); Richardson v. Astrue, No. 10-CV-9356 (DAB) (AJP), 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) (where consulting physician's opinion that plaintiff's ability to sit was "mildly to moderately" impaired was "so vague as to render it useless in evaluating whether [plaintiff] could perform sedentary work"), report and recommendation adopted, 2011 WL 3477523 (S.D.N.Y. Aug. 8, 2011).  Such error frequently requires remand.

The error is heightened in this case, where the inquiry involves CRPS.  A focus on

27

a single set of objective examination results is inconsistent with the approach required by SSR 03-2p, that recognizes "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved."   SSR 03-02p, 68 FR 59971-01, at *55974, 2003 WL 22380904, at *5.  This recognition is based upon the nature of CPRS, a "disease for which objective findings can be minimal."  Deborah M. v. Berryhill, No. 19-CV-1901-DMR, 2020 WL 7625483, at *6 (N.D. Cal. December 22, 2020) (quoting Hunt v. Astrue, No. EDCV 08–00299–MAN, 2009 WL 1519543, at *4 (C.D. Cal. May 29, 2009)); Cooley, 2013 WL 12224205, at *4 ("the lack of supporting diagnostic and clinical findings is to be expected and may not provide a sound basis for rejecting a claimant's complaints of severe pain."); see also Mark L. v. Saul, 2019 WL 2560099, at *3 (N.D. Ind. June 21, 2019) ("[A] claimant who experiences this condition will often not have the sort of objective clinical findings that would normally be expected to produce the amount of pain the individual is reporting.").

### 3.  The ALJ's Consideration of Time Off Task and Attendance Is Inconsistent with SSR 03-02p.

At plaintiff's February 25, 2019, hearing, the VE testified that the standard employer tolerance for time off task for unskilled jobs was no more than ten percent of the workday, and no more than two missed days of work each month. T at 89.  Multiple treating source opinions concluded that plaintiff's pain and the side effects of her opiate medication would cause her to be off-task more than 33% of the workday, and/or be absent more than four days per month.  Id. at 690, 784, 1192.  Adoption of these limitations would thus require the ALJ to find that plaintiff was disabled.

The ALJ rejected all of the treating source opinions with regard to time off task and

absenteeism as speculative.  With regard to N.P. Pane's opinion that plaintiff would be off task for more than 33% of the workday and was likely to miss four or more days of work per month, the ALJ found "[t]here is no objective evidence to support [N.P. Pane's] regarding the claimant's absenteeism or time off task."  T. at 22. She also rejected Dr. Sethi's opinion that plaintiff was likely to miss more than four days per month because "aside from [plaintiff's] subjective reports, there is no evidence to support" this conclusion. Id. at 23.

The ALJ's approach ignores the nature of CRPS, whereby a physician or other treating source must rely, at least in part, on a patient's subjective pain symptoms when assessing the resulting functional limitations.  See Christine P. v. Saul, No. 6:20-CV-702 (NAM), 2021 WL 1854508, at *9 (N.D.N.Y. May 10, 2021).  It is also inconsistent with the approach set forth in SSR 03-02, which recognizes

> Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times.  These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered.

SSR 03-02p, 68 FR 59971-01, at *55974, 2003 WL 22380904, at *5.

The ALJ did not discuss the impact of plaintiff's physical pain on her ability to remain on-task and maintain attention and concentration, despite evidence suggesting that plaintiff needed to regularly change positions from sitting to standing.  Instead, the ALJ relied entirely on psychiatric opinions concluding that plaintiff's psychiatric impairments had minimal impacts on her ability to maintain attention and concentration.

T. at 25.  This was error.  It is well recognized that the need to periodically alternate walking, standing, bending or sitting during the work day is often "inconsistent with the ability to sit for six hours in an eight-hour workday with what are vaguely described as 'normal breaks.'"  Harris v. Comm'r of Soc. Sec., No. 14-CV-5123 PKC, 2015 WL 5774865, at *13 (E.D.N.Y. Sept. 29, 2015).

The ALJ's RFC determination also failed to follow SSR 03-02p's instruction to evaluate the impact of plaintiff's medication on her ability to remain on task.  See SSR 03-02p, 68 FR 59971-01, at *55974, 2003 WL 22380904, at *5.  Although plaintiff appeared to tolerate her medication and gave no indications of opiate abuse, NP Pane noted that plaintiff had been on high dose narcotic pain medication for a number of years. Id. at 921 These drugs left her fatigued and sedated, and NP Pane noted potential negative impact on plaintiff's short-term memory.  Id.  This opinion was consistent with plaintiff's testimony that her medication frequently made her feel "drowsy," "groggy," "foggy-like," "confused," and "like you are not all there."  Id. at 54, 78.  NP Pane also raised the possibility that high doses of opiate mediation could be exacerbating her neuoropathic pain.  Id. at 1170.  In response to these concerns, plaintiff's treatment providers had made numerous unsuccessful attempts to wean her off these drugs.  Id. at 1130-1131, 1170, 1201.  Substitute therapies including medical marijuana, physical therapy and spinal stimulator implants had been unsuccessful, and plaintiff was still on relatively high doses of opiate and narcotic pain medication at the time of her second administrative hearing on February 25, 2019.  Id. at 20, 83, 921, 1197, 1203.

Conflicting evidence in the medical record is not unusual in cases of CRPS due to the transitory nature of its objective findings and the complicated diagnostic process

involved.  SSR 03-02p, 68 FR 59971-01, at *55974, 2003 WL 22380904, at *5.  SSR 03-02 further provides that "clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources."   The ALJ made some effort in this regard, requesting clarification from treatment providers "on the degree to which [their opinion] is based on objective medical evidence versus reliance on subjective complaints," an approach at odds with SSR 03-02 and the inherent nature of CPRS.  Christine P., 6:20-CV-702 (NAM), 2021 WL 1854508, *9 (N.D.N.Y. May 10, 2021) (remanding where ALJ's reasons for discounting treating physician opinion failed to properly account for the particular characteristics of plaintiff's diagnosis of complex regional pain syndrome); see generally Lisa E. v. Comm'r of Soc. Sec., No. 20-CV-37 (MWP), 2021 WL 4472469, at *10 (W.D.N.Y. Sept. 30, 2021) (remanding where ALJ's decision suggested "a fundamental misunderstanding of the nature of fibromyalgia" that influenced the ALJ's assessment of the medical opinion evidence and plaintiff's activities of daily living); Kristi M. v. Comm'r Soc. Sec. Admin., No. 3:20-cv-00336-YY, 2021 WL 4429795 at *9 (D. Or. 2021) (remanding where ALJ's decision demonstrated a fundamental failure to appreciate the "hallmark" of the plaintiff's chronic fatigue syndrome, including that it "often manifests with normal objective findings"); Ian S. v. Comm'r of Soc. Sec., 20-CV-6022-A, 2021 WL 3292203 at *8 (W.D.N.Y. Aug. 2, 2021) (remanding where ALJ's evaluation of opinion from treating physician improperly relied upon a lack of objective findings and a mischaracterization of the plaintiff's activities of daily living).  On remand, the ALJ's development of the record should factor in the nature of plaintiff's CRPS.

## IV. Conclusion

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error.  See Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling.

Because the Court has determined that remand is warranted for proper application of SSR 03-02p, the Court declines to address the remaining arguments raised by the parties.  See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13-CV-6844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").  Upon remand, the ALJ may consider these arguments as deemed appropriate.

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 22) is **DENIED**; and it is further

**ORDERED**, that the matter is **REVERSED AND REMANDED** pursuant to

sentence four of 42 U.S.C. § 42 U.S.C. § 405(g), to the Commissioner for further

proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Dated:      October 26, 2021
            Albany, New York

Christian F. Hummel
U.S. Magistrate Judge